Good morning, Your Honor. May it please the Court, I'm Richard Hamlisch and I represent Liza Brown in this case. Help me on what's confusing me in this case. Pardon? Help me on what's confusing me in this case. What's confusing me and what's, can you hear me okay? Yes. And what's exciting, it's kind of different. The really interesting part's over the dam. She gets pregnant with another man's kid. She and her husband have an argument. She shoots him twice in the back and kills him as he's running away. And she gets this incredible deal from the prosecutor and winds up more or less skating, she thinks, so long as she'll plead. But then they don't let her out in the 7 1⁄2. She doesn't mention it to anyone at her parole hearing. She eventually gets out at 17. And we say she's entitled to get out in the 17 because she had a deal for 7 1⁄2. That's all done. What this is about is whether she can also get money for keeping her in for the extra years. Now the only people she can get money from are people without immunities. I can't figure out which defendant. There are a bunch of them. But every one of them looks like they either have no personal involvement in the matter, so they don't have 1983 liability, or else they have one or another many forms of immunity that apply to these different types of government officers. I can't figure out one of them who's both personally involved and doesn't have an immunity if they made a mistake. Tell me the best one and why they don't have immunity. Well, I'm not sure with that question where to start. Well, why don't you pick out one? I think you thought your best was the prosecutor by saying it's not a prosecutorial function to argue to the parole board that they shouldn't parole a particular murderer. I think you thought that was your best, and I had real trouble saying that wasn't a prosecutorial function. Well, let me address one issue, which I think is the overriding issue in this case, and that is whether a parole board hearing and parole board members have quasi-judicial immunity, absolute immunity, for what they do at parole board hearings. I don't know that it has to be absolute, so I don't know if we have to decide if it's absolute or qualified. As long as they've got some kind of immunity, it seems like that would be good enough, since nobody ever told them, hey, I have a deal to get out in seven and a half. That was my deal. Here's the transcript. Look. I think the record, I apologize, Your Honor, my storage of my records was flooded, and I don't have the excerpt of record, so I can't refer to the record here or the transcript. Would you like to borrow my excerpt of record? I didn't have a chance to review it. I'm pretty sure from my review of the record that she just didn't bring it up. Well, I think at least two hearings it was brought up. I'm sorry. Let me just make sure I understand. Your excerpt of record got flooded? When I store my ---- And when did this happen? I didn't realize it until I went to get them for this hearing. Which was when? Which was about a week and a half ago. You know, in 24 hours, who could have had a copy of the excerpt? I realize I could have come here and got them. I didn't think about that, Your Honor. I apologize again. It was stupid. Okay. Let's say she did bring it up. Nothing less. No, no. Nothing less indeed. And incompetent as a lawyer. Let's assume for purposes of discussion that you're right, that she sat there saying, ladies and gentlemen, this isn't right. I had a deal. My deal was that if I didn't get in trouble in prison, if I didn't have discipline violations, I'd get out in seven and a half. Look at my prison record. It's pristine. It's been more than seven and a half years. I'm entitled to get out. Let's just assume that for purposes of discussion. If the parole board members said, well, we don't know about what, if any, deal or legal obligations from the deal there might be, but regardless we think that the nature of your crime is such and the nature of your danger to the public and your lack of remorse is such that we don't think it's safe and appropriate to let you out yet, so we're denying parole. Why wouldn't they have immunity for that decision? Because they have no immunity whatsoever for the hearing. They have quasi-qualified immunity, possibly, but it's a ministerial function. Qualified immunity, unless they knew they were violating the law, then they're not liable for damages as a result. That's what it would mean. Well, they may be entitled to qualified immunity for that, but in order to get qualified immunity we have to go through some kind of a procedure to try to find out whether the law was clearly established, was there a constitutional violation, would a reasonable person in a similar circumstance. What clearly established law that a reasonable parole officer would know about would require the parole officers in this case to know that they were violating it when they didn't let her out? Well, I think the law is clear in this circuit, in Brown v. Poole, number one, said that a plea bargain is a contract and the parole board should have known and they should have let her out seven and a half years. If the law was made clear by Brown and the law was made clear subsequent to the decision, so a reasonable parole officer could not be held to a duty to have foreseen Brown. Well, but I think Brown said the law was clearly established before Brown. Brown didn't establish that law. Brown only reiterated. I thought all Brown said was that she had a deal to get out in seven and a half and she's entitled to hold the state to it. Right. That's exactly what Brown said. I don't think it said anything about what a parole officer should have known. Yeah. What did it say that this would have been a basis for granting parole? I think Brown said that a plea bargain is a contract and that has been long established long before Brown. Okay. Well, the parole board says fine, you've got a contract, go to court and enforce it. Where is it written that the parole board says, oh, because you have this contract, we'll grant you parole? She didn't have a contract to get parole, did she? No. That's a point I didn't argue in my brief again and it dawned on me after the brief refile. The parole board, once the seven and a half years elapsed, the parole board, the State of California, had absolutely no jurisdiction over this woman whatsoever. I can't say that. So she should have dismissed her claim for parole. They say we have no jurisdiction. She should never have been brought before the parole board for the purpose of denying it. Right. But we are talking about the liability of the parole board. I don't understand that. The parole board looks at a document, a judgment in a criminal case, that says 15 to life. So from the point of view of a parole officer reasonably knowledgeable about the law, I can't see why he would think, looking at the 15 to life judgment, that he has no business sitting on a decision about whether to parole or after. But that's not what the parole board looked at. The parole board looked at, or should have looked at, a decision from the court that says seven and a half to 15, and she'll get out of 15 if she has disciplinary. I think the judgment says 15 to life. And what had happened was when the prosecutor was selling this plea agreement to her, he told her that in all likelihood, if she behaved herself, she'd get out in seven and a half. No, I disagree with the court on that. Oh, well, let's look at the excerpt, because that's the way I remember it. What I remember is in the transcript, the judge let the prosecutor do the talking. And that's basically, it was in the middle of trial, and they were boarding the trial for this change of plea, and as I remember looking at the transcript, that's how the prosecutor sold it. So I'm not sure what difference this would make anyway. So the parole board sees this, so what? They say, okay, so maybe you have a way of getting out. Go to court and try to get out. What does this have to do with the granting of parole? It certainly doesn't entitle her to parole. There's no deal to get parole, right? Right. So what are you farting the parole officers for? And Mosley could have said, gee, we no longer have jurisdiction, so we dismiss the claim for parole. Go away. Which would have left her right where she was, which is in prison. The parole officers at a hearing said that they are not bound by the plea bargain. The parole officers are not. You don't disagree with that. You said that she didn't have a bargain to get parole early. That's right. But the parole officers are representatives of the state of California. What could they have done? Let's say they had done what you wanted them to do. They would have said, we have no jurisdiction. You're free to go. Put on your everyday clothes. There's the door. Well, I can't tell her she's free to go. If you have no jurisdiction, it means you go back to prison, honey. That's all. They said, we have no jurisdiction. Then you're no longer going to parole here. You're back in prison where you were. It's just a polite word for power. When we say we have no jurisdiction, it means we have no power. We can't decide yes, we can't decide no, nothing. That's exactly what I'm saying. The parole officer had no power to make any decision, yet they did make a decision to die at parole. And that's a violation of a constitutional right. Well, but if they had made no decision, let's say they had no decision to make, no power to make any decision, she would have been back in prison. If they make no decision, it leaves her where she is, which is a prisoner. That's correct, Your Honor. So the fact that they made the decision to deny parole, as opposed to making no decision, actually is no harm, no foul as far as you're concerned. There is a foul. It is not no harm, no foul. Because under counsel ---- and I would ---- let me find my ---- Well, as I outlined in my brief, Sullivan v. County of Los Angeles, when a person is held over in a California prison, jail, county jail, whatever it is, they are not just a ---- they're not a prisoner anymore. Once their term is over, they're no longer a prisoner. Physically, they are. But we're talking about the parole board. If they're no longer a prisoner, the parole board has no authority over them. But they took authority. That's the point. Do you have a case where somebody nailed a parole board member for not granting parole? No, I don't. No, I don't have a case where they nailed a parole board member because the cases say the parole board member has absolute immunity or quasi-judicial immunity because they deny, grant, or revoke parole. In this particular case, they had no jurisdiction to deny, grant, or revoke parole. And they did so without jurisdiction. When you operate without jurisdiction ---- But they deny parole, right? They have no ---- if they have no jurisdiction, they could have entered no order at all, which makes ---- is indistinguishable from denying parole. I don't think it's indistinguishable. They can't very well grant parole, right? No. If they have no jurisdiction, they can't grant parole. What they should have done, and what they were asked to do by an attorney by the name of Buckwalter from Sacramento at a parole hearing, and it's in the record, at least it's in the transcript, that she said, you have no jurisdiction. Well, wait a minute. And asked the parole board to do nothing. I'm trying to apply your abstract legal words concretely. And I know something about the Alaska parole board. They're all part-time. They get appointed by the governor to sit part-time on it. I don't know if that's the way it is here. But I'm thinking, suppose an assistant attorney general wrote them a letter and says, I've reviewed this case that you're about to fly to Juneau to sit on the parole board for, and I've determined the parole board has no jurisdiction over this case. Well, then they'd say, well, I'll stay at my car dealership that day then, or I'll stay at my grocery store that day, or I'll be gardening that day. Because if we don't have jurisdiction, it means we can't sit on the case. We'd be flying to Juneau and flying home for nothing because we're not allowed to do anything. That's correct. And that wouldn't get the prisoner out. But if the attorney general of the state of Alaska produces that letter to the parole board members, he also sends a copy of that letter to Susan Poole, who's the warden of the prison. No, here's what would happen if the letter was right. This woman had a deal. She was supposed to get out in seven and a half if she behaved, and she did. The parole board, he wouldn't say you have no jurisdiction. He'd say, I recommend that she be paroled because she has not misbehaved in prison, and that was her deal. And if he didn't send that letter, then he'd sue the district attorney for going back on the DA's deal. And they got her to plead. And, of course, you'd lose that suit because of the DA's prosecutorial immunity. I disagree with your analysis. You might be able to get a habeas, as you did in the first round, and so she'd get out. But I disagree to the extent of your hypothetical where the Alaskan attorney general writes the letter. I think he would write, if he reviewed the case and he found they had no jurisdiction, I think he would write that letter. He'd have to say you do have jurisdiction, and I recommend that you spring her. That's the only way they can spring her is if they have jurisdiction. I don't think he would say that. I don't think he would say give her parole. I would think if he was a good attorney, he would say you have no jurisdiction. Turn it over to the warden and tell the warden her term of incarceration is over and she should be released. That's what the attorney general would do. Does the parole board have authority to tell the warden? Other than granting parole, does the parole board have authority to tell the warden what the release date is for prison? The parole board sets the release date, yes. No, on parole. For parole. On parole. Does it set the release date absent parole? Say, you know, warden, you think the release date is 2010. We've looked at the file, and we're now telling you the release date is really 2009. I'm not sure I understand the question you're asking. Which part? Well, you're asking if the warden of the prison has jurisdiction to tell the parole board. Does the parole board have authority to tell the warden what the release date is? What the release date from prison or from parole? From prison. Yes, I think the parole board sets the date when the parole starts. If they grant parole. If they grant parole, yes. You said they have no authority to grant parole. Can they tell the warden, you know, it looks to us like you think the parole date is 2010. We've looked at the file, and we think you're wrong. The release date is 2009. We're not granting parole, but we'll just tell you when we think the release date is. No, if they have no jurisdiction, then they can't do that. Why are you saying that? I don't understand. They have no jurisdiction. They didn't do your kindly harm. The parole board, when you don't have jurisdiction and you take jurisdiction, you violated the rights of the prison. How? By keeping her in prison. They denied. They took jurisdiction and denied parole. And because of that, she stayed in prison. Your Honor's time. Good morning, Your Honors. May it please the Court, Deputy Attorney General Lena Sheet. How are you? State Defendant. Did you hear anything today that's not adequately covered in your brief? Well, I can clear up a couple of questions that you asked. You think this was not adequately covered in your brief? It was adequately covered in my brief, Your Honor. Okay. Thank you. Kasia Sagi will stand for a minute. I'm actually here for the District Attorney's. And you think something was not adequately. I'm actually here for this. Thank you. Kasia Sagi will stand for a minute. We're adjourned.
judges: Kozinski, Kleinfeld, Rawlinson